IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Edmond Gasaway,        ) | No. CV-13-00378-TUC-RCC (CRP) |
| Petitioner,    ) | **REPORT AND** |
| vs.    ) | **RECOMMENDATION** |
| Louis W. Winn, Warden,    ) | |
| Respondent.    ) | |

Petitioner Edmond Gasaway,[1] proceeding pro se and confined in the Federal Correctional Institution-Tucson, has filed an Amended Petition Under 28 U.S.C. § 2241 for a Writ of Habeas Corpus by a Person in Federal Custody. (Doc. 6, Am. Pet.). Respondent has filed a Return and Answer to the Petition Under 28 U.S.C. § 2241for a Writ of Habeas Corpus and Motion to Dismiss Petition. (Doc. 16, Answer). Petitioner has filed a Response to Government's Motion to Dismiss. (Doc. 19).

Petitioner is presently serving a 387-month sentence as a result of his conviction on conspiracy and firearms offenses obtained in the Eastern District of Texas on March 5, 1997. (Answer at 2 & Doc. 16-2, Ex. A, Attach. 1, Judgment in a Criminal Case & Attach. 2).[2]

---

[1] The docket sheet shows Petitioner's first name as "Edmond." Petitioner has signed his first name as "Edmon" on the Amended Petition and other papers filed in this case.

[2] Respondent has provided the Declaration of Catherine Smithers, Legal Assistant, Federal Correctional Institution, Phoenix, Arizona (Doc. 16-2, Ex. A), who has verified as custodian of records true copies of certain records submitted as Attachments with

Petitioner was incarcerated at the Federal Correctional Institution at Ray Brook, New York ("FCI Ray Brook"), from January 27, 2011, to March 15, 2013. (Answer at 2, Doc. 16-2, Attach. 4, Inmate History).

This matter has been referred to the Magistrate Judge for a Report and Recommendation. (Doc. 9, Order at 4). For the reasons that follow. the Magistrate Judge recommends that the Amended Petition for Writ of Habeas Corpus should be denied.

## I.     Petitioner's Amended Petition

Petitioner asserts as grounds in the Amended Petition denial of due process based on failure to receive written notice of the charges against him (Ground One), imposition of sanctions disproportionate to the severity of the alleged repeated offense (Ground Two), and a claim that jurisdiction exists under § 2241 for restoration of lost good time credits (Ground Three). (Am. Pet. at 3-10). Petitioner seeks to have his status and prison record restored. (*Id*. at 3, 11).

Respondent argues that Petitioner received all the procedural protections to which he was entitled during the discipline proceedings and the sanctions imposed were consistent with those available to the Discipline Hearing Officer ("DHO"). (Answer at 8-9). Respondent contends that the Amended Petition should be denied. (*Id*.). Respondent does not challenge Petitioner's claim that he exhausted his administrative remedies regarding his allegations. (*Id*. at 3).

## II.    Background

### A.     BOP Inmate Discipline Program

The BOP inmate discipline program identifies certain acts that are prohibited at the prison, classifies their severity as Low, Moderate, High and Greatest, and identifies sanctions to be imposed when an inmate is found to have committed a prohibited act. 28 C.F.R. §§

---

Respondent's Answer.

- 2 -

541.1, 541.3 & Tables 1-2.[3] (*See* Answer at 3-4). The discipline process generally starts when a staff member issues an Incident Report to an inmate based on the staff member's observation or reasonable belief that the inmate has committed a prohibited act. 28 C.F.R. § 541.5. The Incident Report describes the incident and the prohibited act, and generally is delivered to the inmate within 24 hours of the staff member becoming aware of the inmate's involvement in the incident. *Id.* Following completion of a staff investigation, the Unit Discipline Committee ("UDC") reviews the Incident Report. 28 C.F.R. § 541.7. The inmate may appear before the UDC and may make a statement and present documentary evidence on his behalf. 28 C.F.R. § 541.7(d) & (e). The UDC may find that the inmate committed the prohibited act, it may find that the inmate did not commit the prohibited act, or it may refer the matter to the DHO depending on the seriousness of the prohibited act. 28 C.F.R. § 541.7(a).

If the Incident Report is referred, the DHO conducts a hearing at which the inmate may appear at the DHO's discretion. 28 C.F.R. § 541.8(e)(1). After the hearing, the DHO may find that the inmate committed the prohibited act charged or a similar prohibited act based on the Incident Report, may find that the inmate did not commit the prohibited act, or may refer the incident for further investigation, review and disposition. 28 C.F.R. § 541.8(a). The DHO must be an impartial decision maker who was not involved in the alleged incident as a victim, witness or investigator or who otherwise was not significantly involved in the incident. 28 C.F.R. § 541.8(b). The DHO's findings must be based on "at least some facts and if there is conflicting evidence, on the greater weight of the evidence." 28 C.F.R. § 541.8(f). The DHO provides the inmate with a written copy of the decision. The DHO's decision must include findings on the following issues: (1) whether the inmate was advised of his rights; (2) the evidence relied upon; (3) the DHO's decision; (4) the sanction imposed; and (5) the reason for the sanction. 28 C.F.R. § 541.8(h). The inmate may appeal the DHO's

---

[3] Effective June 20, 2011 and current through March 24, 2016. *See Spotts v. Holt*, No. 3:11-cv-1880, 2015 WL 4219751, at *7 (M.D. Pa. July 10. 2015).

1 decision through the Administrative Remedy Program.  28 C.F.R. § 541.8(i).

2       **B.**      **Inmate Possession of Alleged Fraudulent Lien Documents**

3      Following the enactment of the Court Security Improvement Act of 2007 ("Act"), 18
4 U.S.C. §§ 119 and 1521,[4] the BOP has implemented provisions prohibiting inmates from
5 possessing certain documents related to the filing of fraudulent liens.  (Doc. 1, at 20-27, BOP
6 Mem.).  Under BOP policy, inmates are prohibited from possessing documents or materials
7 that further criminal or fraudulent activity.  (*Id*. at 20).  Uniform Commercial Code ("UCC")
8 filings, lien documents, and documents containing personal information regarding certain
9 persons have been determined to pose a threat to the security of the institution and are
10 considered contraband.  (*Id*. at 21).  Inmate property may be searched randomly or for good
11 cause.  (*Id*. at 22, citing Program Statement ("P.S.") 5521.05).   When contraband is found,
12 it is confiscated and the inmate is provided with a confiscation form.  (*Id*. at 22, citing P.S.
13 5580.07).  An inmate may receive discipline action for possession of contraband.  (*Id*.).  If
14 an inmate is sending material for the possible filing of a false lien or disclosing  unauthorized
15 personal information, the action may be referred for prosecution.  (*Id*.).

16       **C.**      **Factual Background**

17      On October 24, 2012, FCI Ray Brook prison staff searched Petitioner's cell and found
18 postage stamps in excess of that allowed under prison policy and "numerous UCC stamp type
19 devices."  (Doc. 16-2, Attach. 5, Incident Report #2367101 at 1, Attach. 6, Photograph of
20 UCC stamps, & Attach. 10, Photograph of stamps).  According to the Incident Report, 160
21 excess stamps were found "secreted inside a deodorant case and other areas of his property."
22 (Doc. 16-2, Attach. 5, Incident Report at 1).  At the time, prison policy at FCI Ray Brook
23 allowed an inmate to possess no more than 40 first class postage stamps.  (Answer at 6, n.
24 4, citing Doc. 16-5, Ex. D, Institution Supplement RBK 5265.14B at 4).

25

26     [4] *See United States v. Neal*, 776 F.3d 645, 654 (9th Cir. 2015) ("Section 1521 [18
27 U.S.C. § 1521] was enacted ... as part of the Court Security Improvement Act of 2007. ... The statute prohibits the filing of, the attempting to file, or the conspiring to file documents
28 of the sort that could create false liens and encumbrances against federal employees.").

- 4 -

A BOP staff member administratively charged Petitioner with a Code 305 prohibited act, possession of anything not authorized for retention or receipt by an inmate and not issued to him through regular channels. (Doc. 16-2, Attach. 5, Incident Report). The Incident Report was delivered to Petitioner on October 24, 2012. (*Id.*). A prison staff member investigated the incident and concluded that Petitioner had been properly charged and referred the matter to the UDC. (*Id.* at 1-2). Petitioner was advised of his right to remain silent and afforded an opportunity to make a statement. (*Id.* at 2).

When Petitioner appeared before the UDC on October 29, 2012, he stated that the property was the "same stuff they searched before and gave back to me." (*Id.* at 1). He said he had "four books of stamps in a peanut butter jar" and denied knowing about any other stamps. (*Id.*). The UDC referred the charges to the DHO. (*Id.*).

On October 29, 2012 the UDC gave Petitioner Notice of a Hearing before the DHO. (Doc. 16-2, Attach. 7, Notice of Discipline Hearing before the DHO). Petitioner requested the presence of a staff representative but no witnesses. (*Id.*). Petitioner was provided with notice of his rights at the discipline hearing. (Doc. 16-2, Attach. 8, Inmate Rights at Discipline Hearing).

Petitioner appeared before the DHO on November 6, 2012. (Doc. 16-2, Attach. 9, DHO Report for Incident Report #2367101). Petitioner waived his right to a staff representative and admitted he possessed the prohibited items. (*Id.*). The DHO considered the Incident Report, the investigation, and photocopies of the UCC stamp-type devices and the excess postage stamps. (Doc. 16-2, Attach. 9 at 2, Attach. 6 & Attach. 10). The DHO found that Petitioner had committed the prohibited act as charged, that is, possession of anything not authorized,(excess stamps and UCC related), basing his decision on the reporting officer's written statement, the Incident Report, and Petitioner's admission at the hearing. (Doc. 16-2, Attach. 9 at 2).   Under BOP discipline policy, the charge against Petitioner was considered a 300-level prohibited act, and the allowable sanctions included up to 14 days of disallowed good conduct time credit, up to three months of disciplinary segregation, and the loss of other privileges for an unspecified duration. 28 C.F.R § 541.3

(Table 1, "Available Sanctions for Moderate Severity Level Prohibited Acts"). The DHO sanctioned Petitioner by imposing 60 days of disciplinary segregation, disallowance of thirteen days of good conduct time, and 180 days of visiting, commissary, telephone, and email restrictions. (Doc. 16-2, Attach. 9). The DHO included in his reasons for the action that Petitioner had been sanctioned for a previous Code 305 offense, UCC related, some thirteen months earlier. (*Id.* at 3). Petitioner was notified of his appeal rights. (*Id.*). The DHO report was delivered to Petitioner on November 7, 2012. (*Id.* at 3).

## III.    Discussion

Petitioner complains that the sanctions imposed as a result of the disciplinary proceedings and determination, that is, loss of 13 days good conduct time and 60 days of disciplinary segregation, were disproportionate to the severity of the offense. Federal prisoners have a right by statute to good time credits. *See* 18 U.S.C. § 3624. Habeas corpus jurisdiction is available under § 2241 for a prisoner's claims that he has been denied good time credits or has been subjected to greater restrictions of his liberty, such as disciplinary segregation, without due process of law. *See Bostic v. Carlson*, 884 F.2d 1267, 1269 (9th Cir. 1989). "[A] claim challenging prison disciplinary proceedings is cognizable" under the federal habeas statute "only if it will 'necessarily spell speedier release' from custody, meaning that the relief sought will either terminate custody, accelerate the future date of release from custody, or reduce the level of custody." *Nettles v. Grounds*, 788 F.3d 992, 995 (9th Cir. 2015) (citing *inter alia Skinner v. Switzer*, 562 U.S. 521 (2011)). Respondent asserts that Petitioner has a projected release date of November 29, 2024 "via Good Conduct." (Answer at 2). Respondent does not contend that Petitioner's sentence is not affected by the loss of good time credits. The Court therefore has jurisdiction over this § 2241 petition.

To satisfy the basic requirements of due process in the context of prison discipline proceedings, prison officials need only provide an inmate with: (1) a written notice of the charge at least 24 hours prior to any hearing; (2) an opportunity to call witnesses and present documentary evidence in his defense when such action will not be unduly hazardous to

- 6 -

1  institutional safety or correctional goals; and, (3) a written statement by the factfinders as to
2  the evidence relied on and the reasons for the disciplinary action. *Wolff v. McDonnell*, 418
3  U.S. 539, 565-66 (1974).

4        Due process further requires only that disciplinary findings be supported by "some
5  evidence" in the record. *Superintendent, Mass. Corr. Inst., Walpole v. Hill*, 472 U.S. 445,
6  454-55 (1985). This standard is met when "there is any evidence in the record that could
7  support the conclusion reached by the disciplinary board." *Id*., at 455-56. While this is a
8  "minimally stringent" standard, "there must be some indicia of reliability of the information
9  that forms the basis for prison disciplinary actions." *Cato v. Rushen*, 824 F.2d 703, 705 (9th
10 Cir. 1987). The "some evidence standard" does not require the court to examine the entire
11 disciplinary record, independently assess the credibility of witnesses, or reweigh the
12 evidence. *Hill*, 472 U.S. at 455.

13       Petitioner's contention in Ground One is that he did not receive advance written notice
14 of the charges against him. The right to advance written notice of the disciplinary charges
15 requires something more than a conclusory allegation of an administrative violation and must
16 indicate the factual basis for the underlying accusation. *Wolff*, 418 U.S. at 564. "[T]he
17 function of [the] notice [of a claimed violation] is to give the charged party a chance to
18 marshal the facts in his defense and to clarify what the charges are, in fact." *Id.*

19       The Incident Report shows that the charged violation occurred on October 24, 2012
20 at 10:30 a.m. and the Incident Report was delivered to Petitioner on October 24, 2012 at 2:35
21 p.m. (Doc. 16-2, Attach. 5 & Attach. 9 at 1). The Incident Report described the charged
22 incident as follows: a search of Petitioner's property revealed 160 forever stamps, which was
23 over the limit, and numerous UCC stamp type devices concealed in his property. (Doc. 16-2,
24 Attach. 5). The Incident Report shows that when asked if the charge was accurate, Petitioner
25 stated, "I don't know You did the search." (*Id.*). Although Petitioner contends that on
26 October 24, 2012, a Lieutenant merely questioned him about the charges but did not provide
27 him with the Incident Report (Am. Pet. at 5), nothing in the record shows that Petitioner
28 complained to the UDC that he did not receive the Incident Report. (Doc. 16-2, Attach. 5

1    at 1). Petitioner demonstrated his knowledge of the charges when he commented to the UDC
2    about the "same stuff" and said he possessed "four books of stamps in a peanut butter jar."
3         Petitioner admitted during the DHO hearing that he possessed the prohibited items
4    without asserting that he did not receive the Incident Report.  (Doc. 16-2, Attach. 9).
5    Petitioner does not contend that he did not receive notice of the DHO hearing.  Petitioner's
6    conclusory allegation that he did not receive the Incident Report is not sufficient to establish
7    a due process violation.  *See Jones v. Gomez*, 66 F.3d 199, 204-05 (9th Cir. 1995)
8    (conclusory allegations unsupported by a statement of specific facts do not warrant federal
9    habeas relief); *James v. Borg*, 24 F.3d 20, 26 (9th Cir. 1994) (same).  Moreover, Petitioner
10   has not alleged that he was unable to marshal a defense to the discipline charge.
11        Regarding Ground Two, Petitioner argues in part that his possession of "UCC stamp-
12   like devices" did not violate BOP policy,  he possessed the transparencies since 2004, and
13   they were authorized for possession and not contraband. (Am. Pet. at 8-9).  Petitioner refers
14   to the portion of the BOP memorandum that explains that when a prisoner puts UCC
15   markings or notations on a BOP form, the markings do not render the form contraband. (Am.
16   Pet. at 9; Doc. 1 at 22 ("This type of notation, while often nonsensical and of no legal effect,
17   does not cause the Bureau form to be contraband, nor will such notation be a reason, by itself
18   to reject the form.")).
19        Based on the photographs, the items Petitioner possessed were not Bureau forms with
20   UCC notations on them.  They were UCC stamp type devices, with such statements as:
21   "Conditional Acceptance For Value For Ten Days Without Prejudice For Failure To State
22   A Claim For Which Relief Can Be Granted;" "Accepted For Value Return For Discharge Per
23   UCC-1 Enclosed;" and "Deposited For Credit On Account or Exchanged for Non-
24   Redeemable Federal Reserve Notes Without Prejudice Account No.___ By:_____ UCC 3-
25   402(b)(1)."  (Answer at 6; Doc. 16-2, Attach. 6).  It was within the DHO's authority to find
26   that these statements are consistent with document titles the BOP memorandum identifies as
27   contraband. (See Doc. 1 at 21 ("The types of documents usually possessed or prepared by
28   inmates who engage in this sort of activity include documents titled "'UCC Financing

Statement,'" ... "'Conditional Acceptance for Value,'" ... ")). The federal district court does not reweigh the evidence regarding an inmate's innocence or guilt in a prison disciplinary matter. *Hill*, 427 U.S. at 455.

In any event, Petitioner admitted he possessed prohibited items that included an excess amount of postage stamps. (Doc. 16-2, Attach. 9 at 1). Petitioner does not allege otherwise in his Amended Petition. The DHO's determination that Petitioner committed a Code 305 prohibited act is based on "some evidence" and thus satisfies due process.

Petitioner's other argument in Ground Two that the sanctions imposed were improperly increased and therefore disproportionate to the severity of the offense does not warrant relief. Table 1 of 28 C.F.R. § 541.3 provides that, for a Moderate Severity Level Prohibited Act, such as a Code 305 offense, the DHO may disallow up to 14 days of good conduct time, impose up to three months of disciplinary segregation, and withhold other privileges for unspecified periods of time. Table 2 of 28 C.F.R. § 541.3 provides that if the inmate repeats the Moderate Severity Level Prohibited Act within a twelve month period, the DHO may increase both the disciplinary segregation time and the amount of sentence credits forfeited. Here, the DHO noted that Petitioner had been sanctioned for a previous Code 305 prohibited act, UCC related, some thirteen months earlier. (Doc. 16-2, Attach. 9 at 3). The sanctions the DHO imposed as to Petitioner, that is 13 days loss of good time credits and sixty days of disciplinary segregation, fall within the sanctions allowed in Table 1 for a first-time 300 level offense, not within the sanctions allowed in Table 2 for a repeated offense.

With respect to Petitioner's Ground Three regarding the Court's jurisdiction and restoration of lost good time credits, a prisoner who wishes to challenge the manner, location, or conditions of a sentence's execution may bring a petition pursuant to § 2241 in the judicial district of the petitioner's custodian. *Hernandez v. Campbell*, 204 F.3d 861, 865 (9th Cir. 2000); *Brown v. United States*, 610 F.2d 672, 677 (9th Cir. 1980). The fact that the Court has subject matter jurisdiction over this case does not mean Petitioner is entitled to relief.

**IV.  Recommendation**

For the foregoing reasons, the Magistrate Judge recommends that the District Court

1  after its independent review deny the Amended Petition Under 28 U.S.C. § 2241 For A Writ
2  Of Habeas Corpus By A Person In Federal Custody (Doc. 6).
3       Pursuant to 28 U.S.C. § 636(b), Rule 72(b) of the Federal Rules of Civil Procedure
4  and LRCiv 7.2(e) of the Rules of Practice of the U.S. District Court for the District of
5  Arizona, any party may serve and file written objections within **Fourteen (14) Days** after
6  being served with a copy of this Report and Recommendation.  A party may respond to
7  another party's objections within **Fourteen (14) Days** after being served with a copy.
8  Fed.R.Civ.P. 72(b)(2).  No replies to objections shall be filed unless leave is granted from
9  the District Court to do so.  If objections are filed, the parties should use the following case
10 number: **CV-13-00378-TUC-RCC**.
11      Failure to file timely objections to any factual or legal determination of the Magistrate
12 Judge may be deemed a waiver of the party's right to de novo review of the issues.  *See*
13 *United States v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003).
14      DATED this 28th day of April, 2016.

*[signature]*

CHARLES R. PYLE
UNITED STATES MAGISTRATE JUDGE

- 10 -